E-FILED
Monday, 04 May, 2026  08:51:03 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

KRAIG PAYNE,
    Plaintiff,

v.

                                  Case No. 1:24-cv-01350-JEH

TREVOR FRAZIER *et al.*,
    Defendants.

## Order

Before the Court is a Motion for Summary Judgment (Doc. 65) filed by Defendants Bradley Bowen, Casey Brunenn, Zachary Cook, Trevor Frazier, Jacob Heavner, and Jon Wessel (Doc. 65). Plaintiff Kraig Payne, an inmate at Lawrence Correctional Center, has filed a response (Doc. 68) and a Motion for Monetary Relief (Doc. 69). Defendants have filed a reply (Doc. 70) in support of their dispositive motion.

Defendants' dispositive motion is granted for the following reasons, rendering moot Plaintiff's Motion for Monetary Relief.

## I

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has

properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

## II

In September 2024, Plaintiff filed a Complaint (Doc. 1) alleging constitutional violations at Western Correctional Center ("Western") against Warden Brittany Greene and unidentified members of Western's Tactical Team ("Team"). Following screening, the Court determined that Plaintiff's account was sufficient to state an Eighth Amendment claim against the Team members who conducted a strip search of Plaintiff on February 7, 2024, but failed to state a claim against Defendant Greene, as Plaintiff did not allege her personal involvement. However, because the Court could not effect service of process on a Doe Defendant, the Court added Greene as a party to facilitate identification of the Doe Defendants only. Plaintiff subsequently filed an Amended Complaint (Doc. 43),

identifying the Team members as Defendants Bowen, Brunenn, Cook, Frazier, Heavner, and Wessel.

### III

Section 7.1(D)(2) of the Court's Local Rules outlines the requirements when responding to a movant's Motion for Summary Judgment, which mandates addressing each material fact and noting which are undisputed material facts, disputed material facts, disputed immaterial facts, or undisputed immaterial facts. Civil LR 7.1(D)(2)(b)(1-4). Plaintiff may also add material facts in opposing the filing. (*Id*. at 7.1(D)(2)(b)(5)). Plaintiff's response does not contain this information. Instead, Plaintiff outlines the steps taken to exhaust his administrative remedies, which is an affirmative defense Defendants did not raise in their filing.

Although Plaintiff's deficient response to Defendants' dispositive motion requires the Court to deem Defendants' factual assertions admitted under Local Rule 7.1(D)(2)(b)(6), summary judgment in favor of the movant is not automatic. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion, … does not, of course, automatically result in judgment for the movant.") The ultimate burden remains with Defendants to show that they are entitled to judgment as a matter of law. *Id*. Thus, the following material facts are based on Defendants' properly supported brief and the Court's review of the provided record.

On the morning of February 7, 2024, Western staff filed a disciplinary report, noting that Plaintiff had been observed standing in Healthcare Unit ("HCU") Room 3, stimulating himself while observing female staff. After confirming Plaintiff's actions, a Corrections Officer ordered Plaintiff to stop. Plaintiff responded by making derogatory statements. (Pl. Disc. Rpt., Doc. 13 at 30-33.)

Defendants Bowen, Brunenn, Cook, Frazier, Heavner, and Wessel, acting as Team members, were activated later that afternoon to extract Plaintiff from HCU

Room 3. Before contacting Plaintiff, a Team member videotaped the reason for Plaintiff's extraction, which was listed as Plaintiff's "sexual gestures" and displaying gang signs that were considered a safety hazard to all staff members. (Video, Doc. 65-2.)

The Team members had distinct roles for the extraction. (Calc. Tact. Unit Log, Doc. 65-10 at 1.) Defendant Wessel was the Officer in charge. (Wessel Decl. Doc. 65-3 at 1:3.) Defendant Bowen was assigned to the shield position, which is intended to protect team members. (Bowen Decl., Doc. 65-5 at 2:10.) Defendant Frazier was required to film the extraction as the assigned cameraman. (Frazier Decl., Doc. 65-4 at 2:10.) Defendant Cook was assigned as the Door Man, responsible for ensuring no escape. (Cook Decl., Doc 65-6 at 2:10.) Defendants Brunenn and Heavner were assigned as Restraint Officers. (Brunenn Decl., Doc. 65-8 at 2:10-11; Heavner Decl., Doc. 65-7 at 2:10-11.) Restraint Officers are responsible for managing inmate restraints and assisting with the physical search of an inmate, including undressing, inspecting, and redressing the searched inmate. (*Id*.) Defendant Heavner examined Plaintiff's genitals. (Heavner Decl., Doc. 65-7 at 2:12.)

The Team arrived at HCU Room 3 at about 2:15 pm. (Incident Rpts., Doc. 65-9 at 1-8.) Plaintiff complied with the order to cuff up by placing his hands through the chuckhole. (*Id*. Video, Doc. 65-1 at 00:25.) Plaintiff was then escorted to the HCU's First Aid Room, which was empty, with the only people present being the Team members and Plaintiff. (Incident Rpts., Doc. 65-9 at 1-8; Pl. Dep. Doc. 65-15 at 32:17-18.) The curtain in the First Aid Room was drawn to prevent Plaintiff from being seen during the search through the windows on the double door entrance. (Video, Doc. 65-1 at 02:46.)

The conduct of Plaintiff's strip search occurred without incident. (Video, Doc. 65-1; Decl. 65-3 to 65-8; Incident Rpts., Doc. 65-9.) Initially, Plaintiff's

4

handcuffs were removed temporarily to allow him to take off his jacket. (Video, Doc. 65-1 at 04:51.) Plaintiff was placed in new restraints for the remainder of the search to allow for more movement. (*Id*.) Because Plaintiff's thermal wear and shirt were too tight, the restraint officers removed Plaintiff's hand restraint one at a time, and asked Plaintiff to pull his arm out of the thermal wear and shirt, which Plaintiff accomplished. (*Id*. at 06:39-07:12.) Plaintiff's pants were then removed, his sides were checked, and his mouth, ears, hair, genitals, buttocks, toes, and feet were examined. (*Id*. at 08:00-09:46.)

After the Team reclothed Plaintiff, the privacy curtain was retracted. (*Id*. at 10:43-12:32.) At about 2:30 pm, a nurse entered the room and cleared Plaintiff to be moved by conducting a medical examination. (Incident Rpts., Doc. 65-9 at 8.) The nurse noted that Plaintiff was not distressed or physically unstable and denied any pain or injury. (*Id*., Video, Doc. 65-1 at 12:50.) The Team then escorted and placed Plaintiff in restrictive housing. (Video, Doc. 65-1 at 13:17-17:22; Incident Rpts., Doc. 65-9 at 1-7.)

## IV

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). "[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Even where searches are justified by a valid penological reason, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). A search of a prisoner may violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

Plaintiff testified that when the strip search commenced, unidentified Team members began making sexual remarks, laughed on camera, and told Plaintiff to stop talking, which Plaintiff asserted was in reference to another lawsuit he had filed. (Pl. Dep., Doc. 65-15 at 33:19-34:3.) Plaintiff continued that after the Team took his clothes off, they conducted their strip search of his penis, genitalia, and buttocks in front of other women. (*Id*. at 34:10-15.) Plaintiff asserted that touching his "genitals in any type of way" constituted a violation of the law. (*Id*. at 34:16-19.) Plaintiff's response to Defendants' dispositive motion continued this theme, citing the Prison Rape Elimination Act and claiming that the strip search performed by the Team on February 7, 2024, was unreasonable. (Pl. Res., Doc. 68 at 5-6.)

However, when a defendant's "version of events is so utterly discredited" by a videotape that no reasonable jury could believe him, a court should view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) ("When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape.").

Despite Plaintiff's assertions, the Court's review of the video taken of Plaintiff's strip search shows that after entering an empty First Aid Room, Plaintiff was escorted toward the examination area where a Team member drew a white opaque curtain that obscured any possible view from the narrow rectangular window located on each double door that separated the hallway from the room.

Thereafter, the Team informed Plaintiff that they were going to search him and attempted to remove the jacket Plaintiff was wearing over his prison jumpsuit, which took just over three minutes after entering the room. During that time, Plaintiff's handcuffs were replaced by waist chain restraints. During the ensuing

6

four and one-half minutes that the Team actually stripped Plaintiff and searched him, the members spoke among themselves about the next steps, and Plaintiff complied with the Team's instructions. At no time during the search did Plaintiff express objections or concerns. More importantly, the video does not show that Plaintiff's strip search was conducted in the presence of others or that the Team members laughed, made sexual or humiliating comments, or ordered Plaintiff to stop talking. Plaintiff's only statements occurred toward the end of the search when he inquired about what clothing he was allowed to retain after the search.

In other words, the video evidence, which the Court finds dispositive, affirmatively refutes any notion that Defendants Bowen, Brunenn, Cook, Frazier, Heavner, and Wessel conducted a strip search of Plaintiff's person in a harassing manner or intended to humiliate and inflict psychological pain in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

Accordingly, the Motion for Summary Judgment (Doc. 65) filed by Defendants Bowen, Brunenn, Cook, Frazier, Heavner, and Wessel is granted. Consequently, Plaintiff's Motion for Monetary Relief (Doc. 69) is moot.

## V.

In light of the foregoing, the Court Orders as follows:

1) Plaintiff's Motion for Monetary Relief (Doc. 69) is MOOT.

2) The Motion for Summary Judgment (Doc. 65) filed by Defendants Bradley Bowen, Casey Brunenn, Zachary Cook, Trevor Frazier, Jacob Heavner, and Jon Wessel is granted.

3) If Plaintiff wishes to appeal this judgment, she must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the Court in deciding whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of her grounds for appealing so that the

district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, she will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered:May 4, 2026

s/Jonathan E. Hawley
U.S. District Judge